UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SWITCH COMMERCE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-4031-B |
| | § | |
| STAR NETWORKS, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Reconsideration, and Conditional Motions for New Trial or, in the Alternative, to Modify and Amend Judgment (Doc. 20). For the reasons that follow, the Court **DENIES** the Motion.

### I.

### BACKGROUND

The Court has recounted the facts of this case in its Memorandum Opinion and Order compelling arbitration. Doc. 19, Mem. Op. & Order 1–3. In short, this is a breach of contract suit in which Plaintiff Switch Commerce, LLC ("Switch") is suing Defendant Star Networks, Inc. ("Star") for purported violations of an agreement in which Switch agreed to process transactions at Star's ATMs. *Id.* The Court previously found that the arbitration provisions of the parties' agreement were enforceable and dismissed this case in favor of arbitration. *Id.* at 5–13. Switch now moves the Court to reconsider that decision. Doc. 20, Pl.'s Mot. for Reconsideration [hereinafter "Recon. Mot."]. Star has responded, Doc. 21, Def.'s Resp., and the Court does not believe further briefing is necessary. Thus, the Motion is ready for review.

## II.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004). As a result, courts generally treat such a motion as one to alter or amend a judgment under Rule 59(e) or for relief from a final judgment, order, or proceeding under Rule 60(b). Rule 59(e) governs when the motion is filed within twenty-eight days of the challenged court order. *Blueskygreenland Envtl. Solutions, LLC v. Rentar Envtl. Solutions, Inc.*, No. 4:11-CV-1745, 2012 WL 423399, at *2 (S.D. Tex. Feb. 8, 2012). Here, Switch filed its Motion exactly twenty-eight days after the Court entered its Order; thus, Rule 59(e) applies.

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). Rule 59(e) reconsideration is not a "vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, it serves to correct a clear error of law or fact, account for newly discovered evidence, or accommodate an intervening change in controlling law. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *see also Brown v. Miss. Co-op Extension Serv.*, 89 F. App'x 437, 439 (5th Cir. 2004). Therefore, it is "an extraordinary remedy that should be used sparingly." *In re Rodriguez*, 695 F.3d 360, 371 (5th Cir. 2012) (quoting *Templet*, 367 F.3d at 479).

III.

ANALYSIS

Switch raises three grounds for reconsideration: (1) the Court erred in finding that the arbitration provisions were not unconscionable; (2) the Court erred in finding that the agreement to arbitrate was not illusory; and (3) the Court should not have dismissed the case with prejudice. Doc. 20, Recon. Mot. ¶¶ 6–17. As explained below, none of these arguments justifies reconsideration.

At the outset, the Court notes that these are all arguments that Switch either raised or could have raised in response to Star's motion to dismiss. This alone is cause for denying Switch's Motion. Nonetheless, the Court believes that it would be beneficial to address some of Switch's concerns, since they also fail on their merits.

A.  *Unconscionability*

Switch's first argument—that the Court was wrong to conclude that the arbitration provisions were not unconscionable—rests on two alleged errors of fact. First, that Star can unilaterally avoid arbitration under the Operating Rules; and second, that Star acts as the final arbiter, and Switch only received "critical information" about the initial arbitral panel after it initiated arbitration. *Id.* ¶¶ 7(a), 12–13.

To support its first position, Switch cites an Operating Rules provision that allows Star to "enforce compliance with the Rules as permitted in the Rules without initiating an arbitration pursuant to this Chapter 11 and the Dispute Arbitration Policy." Doc. 11-2, Def.'s App. 8. That very same provision, however, also states that "[*a*]*ll disputes* between or among [Star], [Star] Members or Processors or relating to [Star], the Rules or any transactions subject thereto . . . shall be subject

to arbitration as described in this Chapter 11 and in the Dispute Arbitration Policy." *Id.* (emphasis added). So even on a plain reading, the provision Switch cites does not support its position. Star can only avoid arbitration "as permitted in the Rules," and the Rules require arbitration for a dispute that relates to "[Star], the Rules or any transactions subject thereto," which this is. Accordingly, the Rules do not excuse Star from arbitrating this dispute. Furthermore, it is a well-known principle of Delaware law[1] that courts "will not read a contract to render a provision or term 'meaningless or illusory.'" *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quoting *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992)). Here, Switch's reading of the contract would render illusory the requirement that Star arbitrate all its disputes relating to the Rules and transactions subject to them. The Court therefore declines to adopt it.

As to Switch's second ground, it has not explained how the "charter, composition and authority of the Network Advisory Group, the group charged under the Rules with conducting the arbitration" would have materially added to its understanding of the arbitration process. Doc. 20, Recon. Mot. ¶ 13. It is clear from the Dispute Arbitration Policy ("DAP") itself that (1) the Network Advisory Group and Network Advisory Board are drawn from Star's network, and (2) Star's President and Vice President are the final authorities on the arbitral panels' decisions. Doc. 11-3, Def.'s App. 22–26. Switch has not argued that the DAP was unavailable prior to initiating arbitration; indeed, the DAP was adopted in August 2013 and was "available from [Star] upon request." *Id.* at 13; Doc. 11-2, Def.'s App. 9. Thus, the fact that Switch did not have access to the Network Advisory Group's charter and composition is not a basis for reconsideration.

---

[1] Delaware law governs the interpretation of the parties' agreement. Doc. 19, Mem. Op. & Order 4–5.

B.   *Illusory Promise*

In arguing that the arbitration agreement is illusory, Switch again relies on its contention that it and Star were not equally bound to arbitrate their disputes. Doc. 20, Recon. Mot. ¶ 14. As the Court has already explained, however, this is an incorrect reading of the parties' agreement. Therefore, the Court will not reconsider its decision that the agreement was not illusory.

C.   *Dismissal*

Switch last argues that the Court erred in dismissing the case with prejudice rather than staying it. *Id.* ¶¶ 15–17. In the Fifth Circuit, "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Switch has pointed to no contrary authority,[2] so the Court rejects this argument as well.

## IV.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Switch's Motion for Reconsideration, and Conditional Motions for New Trial or, in the Alternative, to Modify and Amend Judgment (Doc. 20).

---

[2] In the one case that Switch cites, although the magistrate judge recommended dismissal without prejudice, the court dismissed the case with prejudice because all of the claims were subject to arbitration. *7-Eleven, Inc. v. Digital Display Networks, Inc.*, No. 3:12-CV-4292, 2013 WL 5305811, at *1, 7 (N.D. Tex. Sept. 20, 2013).

SO ORDERED.

SIGNED: August 9, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE